Petefish v. Morrison.

---

No. 23,574.

M. E. PETEFISH, *Appellee,* v. S. D. MORRISON, *Appellant.*

SYLLABUS BY THE COURT.

MALPRACTICE—*Broken Leg—Negligence of Physician.* The record in an action for damages against a physician for negligence in his treatment and care of an injured patient, examined, and no error discerned therein.

Appeal from Linn district court; EDWARD C. GATES, judge. Opinion filed March 11, 1922. Affirmed.

*Charles F. Trinkle,* of La Cygne, for the appellant.
*John A. Hall,* of Pleasanton, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for damages against a physician because of his alleged negligence in the care and treatment of the plaintiff's broken leg. Her right leg was broken near the ankle, and the defendant was called upon to treat the injured member. He dressed the broken limb and braced it with a splint, and propped the foot straight forward with a pillow. The weight of the foot caused it to turn outward, and in that position the fracture healed, so that now, as the plaintiff walks, her right foot turns outward at an angle of nearly ninety degrees.

Issues were joined, and the cause was tried before a jury which returned a verdict for plaintiff, and judgment was rendered thereon. A motion for a new trial was filed and overruled, and this is assigned as error.

This court has carefully read the abstract and counter-abstract in this case, and also the briefs of counsel, but we find little therein which would be profitable to discuss. It is urged that the verdict and judgment is not supported by "any substantial evidence." One expert witness, an orthopedic surgeon, testified:

"It is elementary in setting fractures that the limb must be placed in a normal position, and the limb immobilized and held firmly by some method in its normal position until the bones have an opportunity to mend; that if the foot was rotated outward, that was sufficient notice that the foot should be put back in a normal position and held there, independent of whether an X-ray was available or not."

Many witnesses testified for plaintiff that this precaution to keep the foot in position was not taken, and that it was permitted to lay over and outward to the right. The defendant's visits to his patient, the plaintiff, continued off and on for about three weeks before he discovered that her foot was everted, by which time the cartilaginous substance had so far formed that the foot could only have been straightened by more pain and suffering; and the record shows that the afflicted woman had certainly borne enough of that, partly owing to the wrong position of her foot while the fracture was healing. There was evidence for defendant that the foot was correctly placed and the fracture properly treated; and it is argued for defendant that he undertook to render limited services only; that he told her she should go to a hospital where an X-ray photograph of her injury could be taken and where she could receive more attention; that her accident occurred during an epidemic of

"flu," and that he had so many patients he was going night and day, sleeping only three or four hours in the twenty-four, at the time, etc., and that the eversion of the foot was caused by plaintiff's own negligence.

The trial court's instructions are not before us. Doubtless the jury were correctly instructed on these matters so far as they affected the defendant's liability; but the disputed facts are all disposed of by the jury's verdict.

The record shows no basis for the argument that the defendant did not have a fair trial, nor any error in the trial court's refusal to grant a new trial. Affirmed.